UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE J. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   14-CV-4097 |
| | ) |
| GERRY BUSTOS, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION**

**JAMES E. SHADID, U.S. District Judge.**

Plaintiff claims that Defendants failed to treat his Hepatitis C during his eight month detention in the Rock Island County Jail. On April 7, 2016, the Court granted summary judgment to Defendants Bustos, Fisher, Schuetz, and Hernandez. The Court denied Dr. Peterson's original summary judgment motion and directed him to file another summary judgment motion with his affidavit attached explaining the basis for his treatment decisions. (4/7/16 Order.)

Dr. Peterson has filed his second summary judgment motion, but the Court will first address Plaintiff's renewed motions for appointed counsel. The Court does not have the authority to

require an attorney to accept pro bono appointment on a civil case such as this. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In determining whether the Court should attempt to find an attorney to voluntarily take the case, the question is "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" Pruitt, 503 F.3d at 654-55 (7th Cir. 2007). Plaintiff still appears competent to proceed pro se. He has obtained his relevant medical records and the transcript of an expert appointed in a case pending in this district regarding the treatment of inmates with Hepatitis C in the Illinois Department of Corrections (08-cv-2282). He has personal knowledge of his attempts to obtain treatment from Dr. Peterson and Dr. Peterson's response. His pleadings adequately convey his positions and demonstrate some knowledge of civil procedure. And, though Hepatitis C is a complex disease, the focus here is on whether Dr. Peterson was deliberately indifferent, the determination of which does not require expert testimony on the particular facts of this case, as will be seen below. *See* Ledford v. Sullivan, 105 F.3d 354, 359 (7th Cir. 1997)(on particular facts of case, expert not necessary to determine whether defendants were deliberately indifferent).

Moving to Dr. Peterson's second motion for summary judgment, the Court concludes that no rational juror could find that Dr. Peterson was deliberately indifferent to Plaintiff's Hepatitis C. Plaintiff was diagnosed with Hepatitis C about two months before his detention at the Rock Island County Jail, but he was asymptomatic, and an ultrasound of Plaintiff's abdomen was normal, as was a physical examination of his liver and spleen. (5/6/14 History & Physical by Dr. Glickenberger; 6/13/14 Clinic Progress Note, d/e 41-3.) The plan from the outside clinic was to perform an "EGD"—esophagogastroduodenoscopy—to check for varices, which are enlarged veins in the esophagus. (d/e 64, p.11; www.mayoclinic.org (search for esophageal varices)(last visited 9/13/16). The plan was also to send Plaintiff for a hepatology consult.

Plaintiff was arrested before he obtained the EGD or the hepatology consult, and the outside clinic does not treat incarcerated persons. At the jail, Dr. Peterson ran some labs which showed that one of Plaintiff's liver function numbers was slightly elevated (39, where 37 or less is normal). (8/12/14 lab results, d/e 41-2.) Dr. Peterson ordered an ultrasound of Plaintiff's abdomen,

which was unremarkable.  (9/23/14 report, d/e 41-2.)  Follow up liver function tests in February of 2015 were completely normal, with Plaintiff's liver function numbers no longer elevated.  (d/e 68.) Dr. Peterson avers that, "[o]n two occasions when the Plaintiff complained of issues which could indicate a progression of Hepatitis C, appropriate blood tests were ordered and in my professional judgment the results of those tests did not indicate any treatment for Hepatitis C was required or would provide any health benefits, therefore no treatment was ordered."  (Dr. Peterson Aff. para. 10.)

Plaintiff spent about eight months at the jail under Dr. Peterson's care until Plaintiff was transferred to the IDOC in March 2015.  Plaintiff is currently being monitored in the IDOC's Hepatitis C clinic but has not yet been referred to begin treatment.  (65, pp. 3-8.)  A case is currently pending in this district before Judge Baker, which, simplified, challenges the IDOC's current policy of providing Hepatitis C treatment only to inmates with a fibrosis stage of 3 or 4.  Orr v. Elyea, 08-cv-2282 (C.D. Ill.)

Plaintiff argues that Dr. Peterson was deliberately indifferent by not ordering an EGD and referring Plaintiff for a hepatology

consult, as the outside clinic had planned to do before Plaintiff was arrested. But Plaintiff does not dispute that he was asymptomatic both before and after his incarceration or that his diagnostic tests both before and after his incarceration were normal, with the exception of a slightly elevated liver function in August 2014. Dr. Peterson exercised his professional judgment, relying on these tests to conclude that no treatment was needed.

Plaintiff points to the testimony of a court-appointed expert in case 08-cv-2232, which supports an inference that all inmates with Hepatitis C should be treated, regardless of the stage of their fibrosis. The expert also testified that an inmate should have at least nine months to one year left on his sentence before receiving treatment, in order to account for the required work-up, treatment, and follow-up time. (Dr. Batey Dep. p. 43, d/e 64.) Plaintiff was only at the jail for eight months, so even under the expert's recommendation, Plaintiff would not have received Hepatitis C treatment. The expert's testimony does not suggest that Dr. Peterson's decision was improper much less deliberately indifferent. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(Deliberate indifference arises "'if the decision by the professional is such a

substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'")(*quoting* Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009).  As for the EGD, Plaintiff has no evidence that an EGD was medically necessary, particularly given that Plaintiff's other diagnostic tests were normal.  *See, e.g.,* www.mayoclinic.org (esophageal varices can be caused by cirrhosis, but there is no evidence that Plaintiff has developed cirrhosis).

**IT IS THEREFORE ORDERED:**

**1)  Plaintiff's motions for appointed counsel are denied (62, 67).**

**2) Dr. Peterson's second summary judgment is granted (59).**

**3) The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.**

**4) Defendants may file a motion for costs within the time allotted by local rule.  If Plaintiff objects to the imposition of costs based on Plaintiff's indigency, Plaintiff must file his trust fund ledger from the past 12 months with his objections to the imposition of costs.**

5) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED: **10/12/2016**

FOR THE COURT:

                                                     **s/James E. Shadid**
                                                    JAMES E. SHADID
                                     UNITED STATES DISTRICT JUDGE